I want to talk, Len. Just talk. Will do. Thank you. I know you will. Okay, we'll hear counsel and Secretary of Labor versus Conocophillips. It's very unseemly to have two parts of the government fighting each other in this. I remember, well, I've been here a long time. I think I've seen it once or twice, but not frequently. Well, that's correct. Let me introduce myself. My name is Gary Stearman on behalf of the Secretary of Labor. I'd like to reserve five minutes of your vital time. That's granted. It's unusual, but it does happen on occasion that the Secretary and Commission do disagree. Mr. Stearman, I'd like to know, and I can't figure out exactly what the hierarchy is. Is the Secretary of Labor technically above OSHA? That's right, Your Honor. OSHA is an agency within the Department of Labor. You'll have to speak up. Judge Garth is all the way in Connecticut, and he can't hear you. Thank you. I can hear Mr. Stearman now. Okay. The OSHA is an agency within the Department of Labor. The Secretary of Labor has delegated her responsibilities to the Assistant Secretary of OSHA. So when you see cases in which the government is OSHA or it's the Secretary of Labor representing OSHA, it's the same entity. And we use the terms OSHA and Secretary of Labor interchangeably. So can't you just – can't the Secretary just say to OSHA, well, this is a serious violation, period, so you just follow me? Well, we could – the Department of Labor, through OSHA, could promulgate a regulation that – or a standard that says all such violations of this standard are serious. And I think that's your question. Yeah. We've never done that. And I think the reason for that is that the – well, two reasons. One is the factual permutations are so great that it may not – it doesn't make sense to establish a rule. Apply it towards the board. It's better to develop these through adjudications and a case-by-case basis. The other reason is that I think when we go through the rulemaking process, we can develop facts, as we've done in the asbestos context, that make the finding of seriousness pretty obvious. You don't need expert testimony to tell the judge when a man's working by an unguarded edge 12 stories up that if he falls, he's going to hurt himself, and that's a serious violation. And when the court reviews the case law that examine the question of a serious violation, you'll find that although it is the Secretary's burden, it's not a hard burden to meet. Judges may rely on their own common sense and their own experience. The D.C. Circuit has gone so far as to say that an ALJ may use any plausible circumstance that may lead to serious harm as a basis for finding a serious violation. Before you go further, Mr. Sterman, if I may, related to the subject that Judge Sloter asked you, I was curious about your conclusion in your brief that if you were to prevail in this particular proceeding, that we should remand for reconsideration of the appropriate penalty. To whom would we remand? And if OSHA is under the Secretary of Labor, why wouldn't we to OSHA and say, use the same penalty that you prescribed earlier, which I think in this case was $1,875 instead of $2,500, something like that? You understand my question? Yes, I did, Judge Carr. Under the statute, it is the commission, which is an independent body, that makes the final determination as to the penalty amount. It is not OSHA, which is a different entity. OSHA makes the original proposal of a penalty, and then when that gets contested before the commission, the commission then adjudicates not only the validity of the citation, but determines the final appropriate amount of the fine. So the commission supersedes the Secretary? Yes, in the sense of determining what the appropriate fine is, Your Honor. Now, we believe that the commission has the last word. Wait, wait, wait. We two people are talking at the same time. I'm sorry. Judge Fuentes was in the middle of a question last week. Very short question. The commission has the last word. That's basically correct, Your Honor. On the penalty? On penalty. Now, we propose a citation. We investigate. We find a violation. And if it gets contested, then the commission adjudicates it. It's a neutral arbiter. And the amount of the penalty, the actual fine, is within its discretion. And that's reviewed by the court under an arbitrary and capricious standard, an abuse of discretion standard.  Mr. Sherman. What about a determination of whether it's serious or less than serious? Well, the commission has that power as well. But the difference is that when the Secretary charges a serious violation and proves a serious violation, the commission has to issue or has to affirm that violation. It's not within its discretion to — it's within its discretion to lower the penalty, the proposed penalty. But when we charge and prove a violation, it has to accept that. And the problem here is that it established an improper legal standard by which to judge the violation here under the asbestos standard. So, Mr. Sherman, let me pursue the question I asked before. You asked for a remand for reconsideration of the appropriate penalty. To whom would we remand? And why should the penalty, if it's OSHA's penalty, why should it be again contested or why should it have to be proved again? Well, it would only go back for the appropriate fine. Okay? The existence of the violations are no longer in dispute. And we ask the court to affirm the violations as serious. But then once that's done, the commission has the discretion of issuing a fine between $1,000 and $7,000. Now, we believe that the commission unduly lowered the fine to only $325 per violation when the ALJ found it $1,850. And we think that's wrong because there was — the commission never accepted the mock testing, which showed the gravity of the violation. And it misclassified. I think the bigger point is that I think the commission needs to reconsider the fine because it under — it reduced the violation in the first place. Are we dealing with a — Well, then why would remand — go ahead, Judge Slovich. I just want to — are we dealing with a turf battle? I'm just trying to find out. I mean, for this company, the difference between $350 and $1,800 is nothing. I mean, it's a big company. And we're not talking about that many violations. So it seems to me that there's something underneath that is not evident on its face. I can't answer that. You'll have to ask that question to the Respondents' Council. You don't want to answer that. No, that's not true, Your Honor. But your main question is, is this a turf battle? Yeah. And I don't think it is because — It certainly looks like it. Well, no, the commission downgraded the violations by setting an incorrect legal standard as to what the Secretary had to prove. Well, that's right. And that's really what's at the heart of what we have before us. Well, absolutely. That's the main issue. When you say the commission downgraded — Mr. Sturman. When you say the commission downgraded the violation, are you referring to the serialty or the violation itself? In other words, it determined that it was not serious? Less than serious. Serious to less than serious? In the context of this appeal, yes. That's our main problem here. It's not? Is that they reduce serious violations to other than serious violations. And I know in some contexts that's important to companies because a serious violation might be a black mark on their record when they go to get government jobs. You started out by saying earlier that, if I heard you correctly, that the commission is required to accept the findings of the Secretary. Well, when we prove our case, it has to accept that. But it did not in this case? It did — well, it put on the department, on the Secretary,  whether the employees suffered any actual exposure to asbestos. Is that what you mean? That's correct. That is the essence of what the commission is requiring of us. And when we get to the serious classification stage, the existence of the exposure is already established. And that's what this Court held in Trinity. I thought, yes, I thought in Trinity the Court did say that in instances in which the Secretary of Labor differs from OSHRC. What is that? That's the commission. That's the commission. The Court must defer to the Secretary. Well, that's correct. So then that goes back to Supreme Court cases, Martin v. Osherick, Cuyahoga Valley. This is a sort of Chevron deference, or like it, in that we now have to — we should defer to the Secretary's findings. To the extent there's a statutory or regulatory interpretation, the Secretary of Labor receives the deference, not the commission. And this Court in Trinity accepted the Secretary of Labor's interpretation. That's correct. Go ahead. Leonard, I know you have a question. I still haven't had an answer to my question, and I would like it, Mr. Sturman. If you were to prevail, to whom would we remand, and for what purpose, inasmuch as the ALJ has already said that this was a serious violation but established a somewhat different penalty? So tell me to whom we would remand. We remand to the commission for a redetermination of the fine. The ALJ decision is only a recommended decision once the commission takes the case, and then the commission becomes the final arbiter of the fine amount. But what do we tell the commission? We say to the commission, you should have deferred to the Secretary, and they got it wrong, therefore you should reconsider the penalty? Is that how you envision an opinion? More or less, I would suggest the Court would be a little more definitive in telling the commission that the violations here were all serious and that it should reconsider the amount of the fine. Well, and should leave aside its legal standard that the Secretary has to show the employee suffered actual exposure to asbestos? I really think that's the heart of the dispute. Am I correct? That's correct. That's our problem. And they, and where did this, well, I guess I have to ask your friends on the other side where this came from, because it didn't come from any reg or statute that I see. It came from the commission's imagination. Judge Garth, do you have any more questions of Mr. Spoon? I have one more, one more question, if I may. Should we remand him for one? I'm sorry, Judge Garth, if I haven't been clear enough. Well, I noticed that in a prior precedent of our court, Wright versus the DM Sabia Company, I don't know whether you're familiar with it or not. It was decided in 1996. What we did was to remand to the commission with the direction that the commission reinstate the ALJ determined. And that was determined by the ALJ. And I want to know whether we do the same thing here, because the ALJ had determined just a slightly lower penalty, but it had still maintained that the violation was serious. Are you familiar with that case? No, I do recall it. And I think the answer is, if the court believes that the fine that the ALJ issued is the absolutely only appropriate fine in this case. But we can't do that, Mr. Sterman. We don't determine fines. Right. Well, that's why we asked the court really to remand it to the commission to make the fine determination. What's the citation of that case, Len? Just a second. 90 F3rd 854. 90 F3rd 854, 3rd Circuit? 3rd Circuit. And unfortunately... Were you or I on that panel? I wrote the opinion, yes. Sorry about that. Well, that explains why you remember it. Yeah. Has he answered your question now? Your question was, do you know that case, basically? Well, I'm aware of courts doing remanding in that way for reinstatement of an ALJ opinion. I'm not fully versed in the particulars of the case. But the ALJ decision in this case was overturned by the commission. In so many words, Your Honor, once the commission takes the case, it has de novo review of the ALJ decision. It basically becomes a nullity. But it did overturn the seriousness fine. Would you say it is that the commission is required to defer to the findings of the secretary? When we prove our case, Your Honor, yes. And we think we have here. And the commission's position is you haven't proven your case because you didn't show actual exposure. That's correct. Basically, that's where we are. What we did show was that there was harm flowing from the exposure, the assumed exposure, based on the rulemaking record that we developed in promulgating the asbestos regulation in which we submitted evidence of to the commission. Is there anything to suggest that you have to prove actual harm? But when it comes to... No, Your Honor, there isn't. I mean, doesn't Trinity stand for the idea that you don't have to prove actual harm, only exposure to serious harm? That's correct, Your Honor. Yeah. That's their position. Okay. Let me take it. I've got one other question. Mr. Sturman, let me just take this a little bit down the road. Uh, if we remand to the commission and the commission does not come up with the same penalty that the secretary came up with, are we going to see this case again? Not likely, Your Honor. The secretary very rarely... I can't think of any instance in which we've appealed just the fine. That the determination of the fine is within the discretion of the commission, and we would have to find some sort of great abuse of their discretion to challenge that issue, that fine. But it's the legal standard that you're concerned about. That's correct. The legal standard in establishing the classification of a serious violation. Okay. I think we understand. Thank you. We'll get you back because you saved a lot of time. Okay. Mr. Murakawa. Good morning, Your Honor. My name is Dennis Murakawa, and I'm counsel for ConocoPhillips in this case. Um, this was a very interesting discussion that occurred during the petitioner's argument, and I thought I would start by trying to clarify a couple of points that may have been sort of confused as we were going through the argument. Can you hear him, Len? Yes. Okay. First of all, uh, the secretary takes the position that actual exposure is required and that the commission required actual exposure to a special case. In order to prove a serious violation in this case. Now, I want to begin with a quote. But that was proven. I mean, that was proven that there was actually, that asbestos, um, came out. No, Your Honor. That was not the, Your Honor, in this particular case, the, uh, commission determined, first of all, that you did not have to prove actual exposure. And I quote from the court's, the commission's decision. With respect to violations involving exposure to asbestos, the secretary need not prove actual employee exposure in order to establish a serious violation. But she must demonstrate that the potential for harmful exposure existed. Well, that's different though. That's not actual exposure. That's how about the potential for exposure or possible exposure. That's correct, Your Honor. That is actually. Or the worker could be exposed to asbestos. That's correct. The, in fact, they, they, uh, the commission actually followed this court's decision in Trinity in articulating the burden of proof required to prove a serious violation. And I quote from Trinity, as such, the question is whether as a result of the failure to test and notify, it was possible, it was possible that an accident could occur in which it was substantially probable that death or serious physical injury would result. And in the, in the commission's case, they basically synthesized that same standard and applied it conceding that no actual exposure was necessary, but that the burden of proof was on the, the secretary to prove in the first instance, the possibility that exposure to harmful levels of asbestos could occur in this particular, that shown in this case, the possibility of exposure. And I understand that they actually found asbestos in the linings of that outer skin of the, uh, of the oil conduit. Well, the secretary would like to have you believe that the mere presence of asbestos in the, in the asphaltic mastic coating on this pipe necessarily means exposure will occur by virtue of the percentage. And that's in fact, never been delineated in the standard. No, no, I, I, I, as I understand it, the, the presence of, of asbestos at the worksite is enough from which one can conclude that a worker is possibly may become exposed to asbestos. Your Honor, let me, if I may explain the distinction between the material involved in this case. You disagree with what I just said? I do, Your Honor. Let me explain. There are two, there are several classes of asbestos work that are performed under this standard. Class one asbestos work would be work working with, uh, thermal system insulation or TSI. That was the material involved in the Trinity case. It was an insulating blanket underneath a brick wall in a furnace. And in that particular case, thermal, uh, thermal system insulation is deemed class one. What makes class one very unique and different from all other kinds of asbestos work is that class one under the standard has a unique and special presumption that anytime you do any work with TSI, you are presumed to be exposed to dangerous levels of asbestos merely by doing the work. If you look at the Trinity opinion, is there any emphasis put on the fact that it's class one rather than class two, which is what's involved here? Uh, in fact, Your Honor, uh, in Trinity, in, in the decision in Trinity, uh, the specific aspect of it, remember, this was thermal system insulation involved in the case, which legally under the standard has a presumption of dangerous exposure. Is that like very, very bad asbestos? Very, very bad. Because it's friable asbestos, Your Honor. Isn't all asbestos very, very bad? Your Honor, I, I think this, OSHA considered that in the rulemaking process for this standard, and they finally acknowledged, reading the legislative history here, that there are all kinds of different applications, all different kinds of asbestos that can be bound up in all different kinds of mediums and materials. Well, this is asbestos in construction. This is AIC. That's correct, Your Honor. The one thing there was no disagreement on with respect to the standard was that thermal system insulation and that spray-on insulation, things like that, could create friable asbestos. That is where it goes airborne just by disturbing it. And that kind of asbestos is recognized universally as the most dangerous kind of asbestos. Mr. Murakami, I have Trinity in front of me, and I just really quickly looked at it again, because I looked at it after reading your brief, in which you make a big deal about the fact, class one versus class two. I don't see anything in Trinity, three points on the page, where they emphasize the fact that it was class one. Well, Your Honor, I think by definition, there was no, there, first of all, there was no dispute in the Trinity case that the material was TSI, and TSI, thermal system insulation, is the only major category of asbestos in class one. But our court didn't point out the fact, you try to say Trinity, as I understand your brief, you try to say that Trinity is different because that was class one and this is class two, and I don't see that that's emphasized in Trinity. Now, am I missing something? Well, let me read a quote from that decision, Your Honor, if I will, if I may. The failure to test for asbestos in those situations in which it is presumed to be present, not found but presumed to be present, and given the failure to test and concomitant failure to communicate, is unquestionably a serious violation. So you begin with a basic proposition in Trinity that the material there was presumed as a matter of law to be present at the workplace and could cause serious injury. Now, if you take that presumption, then failures or violations are clearly by definition serious. We have no disagreement with that, Your Honor. The question, however, is this. The standard excludes class two from that presumption, specifically on the face of the standard. And that's why, in this particular case, I found at the very outset that the argument was Where does it do that? Where is this exclusion to be found? The exclusion you just spoke about. In the provision for F2II, which is in the standard itself, there is a provision that calls for initial determinations that must be made to determine the presence of asbestos in the workplace. In that same provision, F2II, is a provision that says when dealing with class one material only, unless you do a negative exposure determination in the first instance, there is a presumption that all employees doing any work with class one material, in this case, TSI, are presumed to be exposed to levels above the permissible exposure limit. That is dangerous levels, by everybody's acknowledgement. But, Judge Barry. No such provision applies to class two. Well, Judge Barry said at the end of Trinity, actual knowledge of the presence of asbestos is irrelevant, not because it is presumed, but rather because a violation of the regulation does not require that any asbestos actually be present. I mean, that sort of knocks the heart out of your argument in your brief, at least it seems to me. No, Your Honor. I think in that particular instance, Trinity was arguing they didn't realize there was any asbestos there, and that, therefore, the standard didn't even apply to what they were doing. The presumption we were talking, we're talking about here goes to the issue of the potential effect of the presence of asbestos here, and the fact that it can be harmful. The issue in class two is made clear in the fact that without that presumption, the Commission, following the standards set forth in the Trinity case, simply said the secretary in the first instance has the burden of showing that there was some possibility that the work being performed on the material involved could result in an exposure which could be serious and harmful to the employee. So you could have serious harm in the class two category. You can have the possibility of serious harm in the class two category. Yes, Your Honor. And that's what was proven here, wasn't it? Well, it was not proven here, Your Honor. The point to be made here is that the secretary offered no evidence, no evidence at all, other than the fact that there was asbestos content in the material. They introduced no evidence whatsoever to show that the work, the manner in which the work was performed on the material in question could have produced or created an exposure. But there was asbestos fiber. Didn't they find asbestos fibers in the air? below, all of the mock testing was done in this particular case by the company. Yes. Not required to do so, but the company did a mock test after it was reported that there might be asbestos in the material. The results of that mock test were credited, actually, by the administrative law judge in the case who said that it did, was a fair replication of the work that was being performed that day. The test results are very significant because what they showed is no detectable levels of asbestos in the material that was tested in the mock test. OSHA did a test also, did it not? It did not. See, that is the issue, Your Honor. OSHA did no test. They had access to the same material as ConocoPhillips. They could have done a test. They did no test. They could have called an expert to look at the material. They called no expert. They could have done an analysis through literature of the fact that the mastic involved here somehow could release asbestos fiber, but they did no such study. They introduced no such evidence. And that's really the key of this case, is the fact that the Secretary, having offered no case-specific evidence, is arguing that the Court here ought to find a serious violation merely because they found the presence of asbestos in the material. No, the Court here should find a serious violation because the ALJ found a serious violation. It's the ALJ that's the fact finder. I mean, we're not the fact finder. The ALJ is the one who had all of these studies in front of him or her. I don't know what it was. Well, it's interesting that you mention that because Commissioner Thompson, one of the commissioners in the Review Commission, made a very interesting observation in a footnote in the commission decision. And that is, he mentions the fact that the particles, particulate that was found in the case, none of which was identified as asbestos, sums very, very small amount that was found, was not even breathing zone data. It didn't indicate that this was material that was being even potentially breathed by the employees. It was referred to as background information or area sampling. It did not test within the breathing zone of the employees doing the work. As a result of which, he said that under any analysis that OSHA could use, you can't rely on background test data to determine whether an exposure had occurred. How do you answer the Secretary's claim that the commission's decision requiring the Secretary to produce case-specific evidence of the possibility of harmful asbestos exposure would place an insurmountable evidentiary burden on the Secretary? And that really is the, that's one of the three claims of the Secretary. And the Secretary said that conflicts with this well-established understanding of the substantial probability requirement of 29 U.S.C. 666. Your Honor, I don't think there's any, I don't think there's any disagreement here that the Secretary actually offered no evidence at the hearing below with respect to exposures, potential exposures to asbestos. What they say instead is they're entitled to a presumption. That any time you work with asbestos, you're entitled to the presumption that you're going to be exposed or possibly exposed to dangerous levels of asbestos. And that is belied by the specific provisions of the standard itself. On that point, Mr. Markawa, let me, I have a note here from my review of the record to tell me if this is correct or not. On September 22nd, an Occupational Health and Safety Administration compliance officer went to the site and took multiple samples. Two samples tested positive for asbestos in the amounts of 20 to 62 percent. Is that wrong? That is wrong, Your Honor. Actually, if you read the administrative law judge's decision, she specifically discredited all of the samples done by the compliance officer and refused to consider them because, in her opinion, the compliance officer's own data failed to identify that the material he found even came from the subject mastic. Only one piece that he actually took off the mastic itself was tested at zero, no asbestos in it whatsoever. So she did not rely on any of the compliance officer's data at all in reaching her decision. What did the administrative law judge rely on? The administrative law judge actually relied on the company's own test that they did contemporaneously. It showed what? It showed that between 2 and 20 percent asbestos in the material. Well, that's a lot. I mean, 20 percent, I mean, even 2 percent of asbestos sounds troublesome to me. Well, Two to 20 percent. There's no direct linear correlation between asbestos content and actual exposure, and that's evidenced by something very important right in the standards. If you read section 88 of the standard, which is in the introductory part of the standard, it's recognized that roofing tiles and roofing cements and roofing mastics, very similar to this, are exempt from the standard, notwithstanding the fact that these types of materials have very high asbestos content, up to 50 percent in many cases. Is it all that's required is a possibility of exposure to asbestos in order to conclude that there may be serious harm? Well, two factors, both the possibility of exposure to asbestos as well as the detrimental impact of that exposure to show that it has a likelihood of serious injury or death. Yes, but it's still the possibility of exposure, which was the standard that the commission required the secretary to prove here. The secretary had the option of putting on that proof, and he may disagree and say, well, I don't need to call experts in cases, but it's called a burden of proof. The prosecutors, the secretary of labor, the moving parties always have the burden of proof to prove violations. Now the subject of deference, are you not required to defer to the findings of the administrative law judge? Your Honor, yeah, I'm glad you raised that question, because the issue of deference under the Martin v. Occupational Safety and Health Review Commission decision is correct. It says that the secretary of labor's interpretations of their own standards are entitled to deference. No disagreement with that. However, you need to read further in that opinion, because the Supreme Court said they're entitled to deference so long as it is reasonable, the interpretation itself, and conforms to the purpose and wording of the regulation. Now this is an important distinction in this case. As I mentioned at the outset, this is a case where the presumption at law of exposure, which they are attempting to de facto include in this case for Class II material, which is not covered under that presumption, is reading a new requirement into the standard. That would not be acceptable even under the CF&I Steele precedent. That is only a reasonable interpretation. This is making a substantive change in the standard, which we believe, Your Honor, would be a substantive rulemaking challenge. So for that reason, we don't think that the Martin case stands for the proposition that the secretary of labor can engage in this sort of de facto rulemaking by interpretation. Judge Garth, did you have any more questions? Yes, I have one. I noticed you referred to Martin versus Osherick, but in Trinity itself, it talks about page 400, that the court must defer to the secretary's reasonable interpretation. So I'm on the same track, I think, as Judge Fuentes in asking whether or not we must do that. Your Honor, I believe in this case it would be inappropriate for the court to find that the commission was required, in this case, to defer to the interpretation being offered by the secretary of labor. This was an offer to change. I didn't say the commission. I beg your pardon. I didn't say the commission. I'm saying that Trinity states that the court must defer to the secretary's reasonable interpretation. Correct, Your Honor. And if the fact is that it's a reasonable interpretation, as I quoted earlier, no disagreement. Our view is this is not a reasonable interpretation. Adding a substantive presumption for all types of asbestos, even though they are not included within that presumption in the standard, would not be a reasonable interpretation of this standard. That puts the court in an impossible position. After all, the court is not made up of experts who know, I don't even know what field this is, physics or whatever field it is. We have to rely on the people that Congress said were put in charge. And to say that we, well, I think you're putting an unrealistic burden on non-professional, I don't know what these people are. Well, Your Honor, I don't know what the, what is the, what are they? Expert what? The commissioner you're referring to? Or the, yeah, all the people who did these tests. Well, what is the field? I don't even know. I mean, I was married to a scientist, but not this time. Just at the outset, there was sort of a discussion regarding your question, Your Honor, regarding whether or not this is just a matter that should be resolved in the Secretary of Labor. You know, this is, these are all various departments of the Department of Labor. And isn't that what we have going on here? And that's why we have administrative bodies. And with respect to the Secretary of Labor and the solicitors and OSHA, yes, I agree with that, but not the commission. The commission is the one independent body within this administrative network that has the independent authority to decide not just penalties, but also to decide whether or not classifications of violations are serious, non-serious, or de minimis. And that's really the independent issue here at stake. And that was the issue in Mark, was the review commission's right to decide these issues or whether they were required to defer to the Secretary's interpretation. And in our view, they are required to defer, but only where the interpretation being offered, as in this case, is reasonable. Is reasonable, that's correct, Your Honor, and consistent with the standard. Thank you. Thank you, Your Honor. Okay, Mr. Stearman, I see why you say 5 minutes rebuttal. Thank you, Your Honor. I want to get back to the Trinity case for a minute and read a quote. I mean, that is, after all, this Court's precedent, and we are bound to follow it. That's right, and it's the benchmark here. The Court wrote, the substantial probability portion of the statute refers not to the probability that an accident having occurred, death, or serious injury could result. The existence of exposure is already established. Where are you reading from? Can you tell me? Sure, Your Honor. Page 401 of the Trinity. Thank you. Trinity decision. It's in the middle of paragraph identified as head note 5. Okay. That quote says that the accident has already occurred. When you translate that to an asbestos violation, the exposure has already occurred. All this talk about the mock testing and whether there was an exposure is irrelevant at this point in the proceeding. And that's the problem with the commission standard, is it's requiring the Secretary to prove that there could have been a harmful exposure. Now, once the existence of the exposure is assumed, as it must be at this stage of the proceeding, then we're just talking about the medical consequences that can flow from that exposure. The rulemaking record, as you pointed out, Judge Kuentes, pretty much says all asbestos exposure is bad. Doesn't matter if it's class 1. Doesn't matter if it's class 2. All exposures lead to a significant risk of developing asbestosis, gastrointestinal cancer, lung cancer, mesothelioma. So what's the point of category 1, category 2, 3, and 4? The Secretary recognized that within these different kinds of work, there were some exposures that were, and some health risks that were greater. We acknowledge that. But what the Secretary points out in the rulemaking record is the differences in these classes is not major. They're very minor. And when you look at the standard, the vast majority of requirements apply to all classes of work. The Commission here really has the tail of the dog wagging the dog by pointing out one particular difference in which class 1 work is treated. But for the vast majority of protections, and especially when we're talking about the violations here, the type of class of work is irrelevant. What we found in the rulemaking record is that exposures at levels below that can be reliably measured, levels so low we can't even accurately measure them, there's a significant risk of harm. And that's why I ask you something, Mr. Sturman. It's been bothering me ever since I read the briefs in this case. If there is an apartment house in which I live and a pipe carrying water or carrying any other substance in the apartment house is broken into compromised, one calls a contractor, a plumber, presumably, are you telling me at this point that the fact that you don't know but that there is a possibility that within that pipe, once it is repaired, there could be asbestos exposure, that that is sufficient to get a serious violation recorded? And I'm giving you this hypothetical because I want to know at what point does the pipe problem, which does not disclose what's inside, occur? We have a pipe here that broke and they chipped away and we have ended up in court on it. What happens in the ordinary case, which you tell us it doesn't make any difference whether it's a class one or class two? Well, there would have to be testing on the mastic of the pipe to determine whether there's asbestos there. That's what they did here. They tested it and they found that there was some asbestos. Now, is it that every time a pipe fractures, every time something of that happens in a construction project, that we have a serious violation? Basically, the answer is yes, Your Honor. If no protections whatsoever are made, if there's no testing for the presence of asbestos, and that sounds like the situation here. I mean, there's certain rules as to the age of the pipes and the age of the building. And what it's carrying, it doesn't matter whether it's carrying oil or water? No, I don't think that matters, Your Honor. But based on the age of these pipes, the company knew in all likelihood that this mastic was covered with asbestos or contained asbestos. They had a policy that if you don't know what's in the mastic, you test it first before working on it. And they didn't follow that. As I understand it, the whole point of this is when you find that, you're supposed to wear certain protection, which they didn't wear here, supposed to have certain notices to the employees, which they didn't do here. Those were the violations that were the underlying violations that we're talking about. They didn't do anything here. They didn't test for the presence. They didn't have a regulated area. They didn't provide protective clothing. They didn't wet down the asbestos while they were cutting into it. You're supposed to notify that there's a notification of the environment? That's correct, Your Honor. They didn't do anything. So when you're talking about Class II work in which the employer does nothing to protect the employee, that's going to result in a serious violation. And I think the Trinity case teaches that as much. Thank you. Do you have any more questions, Judge Barr? No, I do not. Thank you. Okay, thank you. We will take this matter under advisement. Thank you.